IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(RICHMOND DIVISION)

| | |
|---|---|
| Ben H. Droste and Calvin Cash, Individually and as Class Representatives, | : : : : |
| Plaintiffs, | : : |
| v. | Civil Action No. 3:14-CV-00467 : : |
| Vert Capital Corp, Wolff-Fording Holdings, LLC, and Wolff-Fording & Co., | : : : |
| Defendants. | : |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION FOR AN ENTRY OF AN ORDER OF DEFAULT AND FOR
PROCEEDINGS TO DETERMINE THE AMOUNT OF A DEFAULT JUDGMENT**

Plaintiffs, Ben H. Droste and Calvin Cash ("Plaintiffs"), on behalf of themselves and all others similarly situated,[1] hereby submit this memorandum of law in support of their motion for an entry of an order for default against all defendants and for proceedings to determine the amount of a default judgment.

**I.   PERTINENT FACTS**

Until their terminations in violation of the Worker Adjustment and Retraining Notification Act ("WARN Act"), 29 U.S.C. § 2101 *et seq.*, which occurred on or about June 10, 2014, and June 23, 2014, respectively, Plaintiffs and all other similarly situated individuals on whose behalf Plaintiffs seek to act as class representatives were nominally employed by defendant, Wolff-Fording & Co. ("Wolff-Fording"). (Second Amended Complaint "SAC", ¶¶ 4, 7-9, Doc. 41). Wolff-Fording is a

---

[1] While Plaintiffs currently are the only Class Representatives named, 54 other former employees of Defendants have retained class counsel, Klehr Harrison Harvey Branzburg LLP, and Sands Anderson, P.C. as Virginia co-counsel, to directly represent them in this class action. Accordingly, obtaining class certification is not required to obtain relief for many of the individuals harmed by Defendants' violations of the WARN Act. Nevertheless, on October 7, 2014, Plaintiffs filed their Motion to Certify the Class. (Docs. 47, 48). Not only have Defendants not filed any opposition to this motion, but Vert Capital Corp. and Wolff Fording & Co. have waived oral argument on it as well. (Doc. 54).

1

Virginia corporation. (See Senior Secured Line of Credit Agreement ("Senior LOC Agreement"), which is Exhibit 4 to Affidavit of C. Michael DeCamps ("DeCamps Aff."), which Affidavit is attached hereto as "Exhibit A"). Plaintiffs and the putative class members also were employed by Vert Capital Corp. ("Vert") and Wolff-Fording Holdings, Inc. ("Wolff-Fording Holdings") (collectively referred to as the "Vert Defendants") under the WARN Act "single employer" theory.[2] Indeed, to establish that Vert and Wolff-Fording Holdings were the single employer of the Plaintiffs and the putative class members, Plaintiffs alleged and the minimal evidence obtained in discovery shows that the three entities were commonly owned and shared common officers and directors, that the Vert Defendants exercised de facto control over Wolff Fording and the decisions that violated the WARN Act, and that the Defendants' personnel policies emanated from a common source. Some of the specific facts that support this are as follows:

On June 2, 2014, Vert incorporated Wolff-Fording Holdings and made Wolff-Fording Holdings Vert's wholly-owned subsidiary. (SAC at ¶2); (Exhibit 4 to DeCamps Aff.); (Stockholders Agreement, which is attached as Exhibit 5 to the DeCamps Aff.). Vert then caused Wolff Fording to become a wholly owned subsidiary of Wolff-Fording Holdings. (See Share Exchange Agreement, which is attached as Exhibit 6 to the DeCamps Affidavit); (Answer of Defendant Wolff-Fording to Plaintiff's First Amended Class Action Complaint, ¶2, Doc. 19). Thus, there is common ownership between the three defendants in that both Vert and Wolff-Fording Holdings obtained a controlling

---

[2] The five factors identified in the Department of Labor regulations and adopted by the vast majority of courts that are considered in determining "single employer" status are: (1) common ownership; (2) common officers and/or directors; (3) de facto exercise of control; (4) unity of personnel policies emanating from a common source; and (5) dependency of operations. 20 C.F.R. §639.3(a)(2); Pearson v. Component Tech. Corp., 247 F.2d 471 (3d Cir. 2001). Courts balance these factors, weigh them differently, and routinely find single employer liability even when less than all five of them are established. Id. at 504; Coppolla v. Bear Stearns & Co., Inc., 499 F.3d 144, 150 (2d Cir. 2007) (explaining that the DOL Factors other than the *de facto* control factor are "not really compelling."); see e.g., In re Tweeter, 453 B.R. 534, 546 (Bankr. D. Del. 2011) (granting summary judgment in plaintiffs' favor on the issue of single employer liability when plaintiff showed only common ownership, officers and directors, and *de facto* exercise of control); Austen v. Catterton Partners, 709 F. Supp.2d 168, 178 (D. Conn. 2010) (denying motion to dismiss when plaintiff plead facts to show only three DOL Factors).

interest in Wolff Fording. (Answer of Defendant Vert Capital Corporation to Plaintiffs' First Amended Class Action Complaint ("Vert's Answer to FAC"), ¶2, Doc. 27).

Also, all three defendants have common officers and directors. The following individuals served as officers and/or directors for all three defendants simultaneously: Richard Shuster (Chief Executive Officer of Wolff Fording and Wolff-Fording Holdings, as well as Director of Vert); Adam Levin (Director of all three entities); Michael Pope (Director of all three entities); and Tristen Lazaroff (Director of Wolff Fording and Wolff-Fording Holdings, as well as Vice President of Business Affairs of Vert). (See Exhibit 5 to DeCamps Aff.); (Answer of Defendant Vert Capital Corporation and Wolff Fording to Plaintiffs' Second Amended Class Action Complaint ("Answer to SAC"), ¶¶29-20, Doc. 55); (Vert's Website, which is attached as Exhibit 7 to DeCamps Aff.); (Minutes of Meeting of the Board of Directors for Wolff-Fording Held on June 11, 2014 ("Meeting Minutes"), which is attached as Exhibit 2 to DeCamps Aff.).

Moreover, Plaintiffs alleged in their SAC that, beginning in early June 2014, the Vert Defendants, as a single employer with Wolff-Fording, assumed complete responsibility for Wolff-Fording's continued viability by, among other things: (a) assuming day-to-day operating responsibilities of Wolff-Fording; (b) maintaining direct oversight and control over Wolff-Fording's strategic, financial, personnel, and benefits functions; (c) exercising control over Wolff-Fording's business plans (including those concerning the day-to-day operation of the business); and (d) making decisions on whether or not to: (i) extend financing or otherwise fund Wolff-Fording; (ii) pay wages and vacation due employees; (iii) furlough/layoff employees; and (iv) cease operations of the company. (SAC at ¶ 6, Doc. 41). Plaintiffs further alleged specific facts to support their contention that the Defendants made the decision to terminate Plaintiffs and other similarly situated former employees who were terminated on June 10, 2014 or June 23, 2014, as part of, or as a result of the mass layoffs and shutdowns, as defined by the WARN Act where Plaintiffs and their fellow former

employees worked. (Id. at, among others, ¶¶ 7, 8, 9, 11, 79, 85, 86); (see also Answer to SAC, ¶¶ 8-9, Doc. 55). The mass layoffs and/or shutdowns were carried out without giving sufficient advance notice to the employees required by the WARN Act and without providing Plaintiffs and all similarly situated employees 60 days' worth of pay and benefits in lieu of the notice. (SAC at ¶¶ 12, 62-63, 85-86, 88, Doc. 41).

## II. **PROCEDURAL HISTORY**

On June 26, 2014, Plaintiff, Ben H. Droste, filed the Class Action Complaint in this action against Vert and Wolff-Fording alleging violations of the WARN Act and the Virginia Wage Payment Act. (Doc. 1). Defendants hired John Barr of John Barr, P.C., and Alison D. Hurt of LeClairRyan, a Professional Corporation, to represent them. Initially, Mr. Barr and Ms. Hurt took steps to actively defend Vert and Wolff-Fording against Plaintiffs' claims. First, on July 18, 2014, Vert and Wolff-Fording filed a Motion to Dismiss the claim under the Virginia Minimum Wage Act and an Answer to the Complaint. (Docs. 9, 10, 12). Second, when Mr. Droste, and a second plaintiff, Calvin Cash, filed the First Amended Complaint ("FAC") on August 1, 2014 (which rendered the Motion to Dismiss Moot), (Docs. 17, 18), Wolff-Fording filed an Answer to the First Amended Complaint ("Wolff-Fording's Answer to FAC"), (Doc. 19), and Vert filed a second Motion to Dismiss, seeking the dismissal of the WARN Act claim against it on the grounds that it was not Plaintiffs' or any class member's single employer ("Vert's Motion to Dismiss"). (Docs. 20, 21). Third, while its Second Motion to Dismiss still was pending, on September 12, 2014, Vert filed Vert's Answer to Plaintiffs' FAC, "pursuant to the Court's Scheduling Order entered on September 2, 2014." (Doc. 27) (see Scheduling Order dated September 2, 2014, Doc. 23, requiring any party who had not filed an Answer to the Complaint to do so within eleven days of the Order).

As Wolff-Fording and Vert engaged in this motion practice, Plaintiffs, wanting to proceed with prosecuting this action, propounded their First Set of Interrogatories and First Request for the

Production of Documents on Vert and Wolff-Fording ("First Set of Discovery Requests"), on September 19, 2014. (DeCamps Aff., ¶2). Among the information requested, Plaintiffs sought the production of Wolff-Fording's personnel records that would show the names and number of employees who were terminated on June 10 and 23, 2014, respectively, as well as their wage rates, for purposes of determining damages. (Id. at ¶3).[3] On the same day Plaintiffs propounded this discovery, as well as on September 22, 2014, respectively, however, Vert's and Wolff-Fording's counsel – Mr. Barr and Ms. Hurt – filed motions for leave of court to withdraw as counsel for these defendants, citing their failure to pay their legal bills and allegedly strained communications (collectively, "Motions to Withdraw"). (Doc. 31, 33). The Court ordered that it would hold its decision on the Motions to Withdraw until such time as Vert and Wolff-Fording had an opportunity to respond to them. (Doc. 37). The Court also entered a Pretrial Order setting March 17, 2015 as the trial date, and March 2, 2015 as the date for the final pretrial conference. (Doc. 35). Therefore, pursuant to this Pretrial Order, as well as the Scheduling Order this Court entered on September 2, 2014, fact discovery must be completed by February 1, 2015. (Docs. 23, 35).

On September 25, 2014, this Court granted Vert's Motion to Dismiss but granted Plaintiffs leave to file a second amended complaint. (Doc. 38). The next day, it also scheduled a settlement conference for November 21, 2014, with Magistrate Judge David J. Novak. (Doc. 39). With discovery already having been propounded, deposition dates discussed, a settlement conference scheduled, and responses to the soon-to-be-filed SAC due, Plaintiffs filed an opposition to the

---

[3] In addition, on September 19, 2014, Plaintiffs served a third-party subpoena for documents on the former majority owners of Wolff-Fording – Jeffrey and Stuart Feldstein, which sought, among other things, the production of documents concerning the relationship between the Defendants, as well as information on the damages to which the Plaintiffs and the Class may be entitled ("Subpoena"). (DeCamps Aff., ¶6). In response to the third-party Subpoena served on the Feldsteins, Plaintiffs received only a packet of documents concerning the relationship between the defendants. (Id. at ¶7). Among those documents were a Senior Line of Credit Agreement, Stock Holder's Agreement, and a Share Exchange Agreement. (Id.).

Motions to Withdraw, requesting that the Court deny the Motions to Withdraw until such time as Vert and Wolff-Fording hired substitute counsel. (Doc. 40). Plaintiffs requested such relief because, if these defendants' counsel were given permission to withdraw, this matter would be stalled until such time as the defendants could obtain other counsel. (See pertinent law cited in Plaintiffs' Opposition to Motions to Withdraw Filed by Defendants' Counsel, Doc. 40).

With the Motions to Withdraw still pending, Plaintiffs filed the SAC adding a third defendant – Wolff-Fording Holdings, and including numerous additional facts to support Plaintiffs' single employer liability theory. (Doc. 41). Shortly thereafter, Plaintiffs also filed a Motion to Certify the Class ("Class Certification Motion"), which was filed at that time pursuant to an informal agreement between Plaintiffs' counsel and Mr. Barr that the Class Certification Motion would be filed not long after the parties participated in a Scheduling Conference with the Court on September 24, 2014. (Docs. 47, 48); (DeCamps Aff., ¶9). Wolff-Fording and Vert were served with the Class Certification Motion via electronic filing on October 7, 2014 (the day it was filed), and Wolff-Fording Holdings' registered agents were served with the SAC, as well as the Class Certification Motion, on October 9, 2014. (DeCamps Aff., ¶10).

Presumably because neither Mr. Barr nor Ms. Hurt were able to communicate with Vert and Wolff-Fording about the many new factual allegations in the SAC, these defendants filed an Answer to the SAC containing, on 75 separate occasions, the following statement in response to numerous averments and/or paragraphs: "Undersigned counsel lack information sufficient to answer the allegations in this Paragraph," (Doc. 55), which, under the Federal Rules of Civil Procedure, is not an acceptable response to a factual allegation in a pleading. See Fed. R. Civ. P. 8. Defendant, Wolff-Fording Holdings, has not filed any response to the SAC to date nor has it given the parties any indication that it ever has retained counsel to represent it. Furthermore, even though Vert's and Wolff-Fording's substantive responses were due to the Plaintiffs' First Set of Discovery Requests on

6

October 22, 2014 and October 30, 2014, these defendants have provided no written responses as required by the Federal Rules of Civil Procedure. (DeCamps Aff., ¶4). Instead, Mr. Barr, on behalf of Wolff-Fording, produced only one document on October 22, 2014, with an email wherein he wrote:

> I'm attaching to this email the document production that is due today for Wolff Fording. This is the only non-privileged Wolff Fording document that we, the lawyers, currently have in our possession. At this time we are not withholding any documents on the basis of confidentiality. We do have documents that we believe are protected from disclosure by operation of the Attorney Client Privilege.

See Email from John Barr to Lee D. Moylan dated October 22, 2014, which is attached to DeCamps Aff., as Exhibit 1. The document Plaintiffs received was titled, "Minutes of Meeting of the Board of Directors for Wolff-Fording Held on June 11, 2014 ("Meeting Minutes"), which is attached to DeCamps Aff. as Exhibit 2. In addition, on October 30, 2014, Vert produced only one excel spreadsheet, with which production Mr. Barr candidly conceded:

> I do believe that there are other documents that can be produced and I am working on attempting to get possession of them so that I can turn them over. I am currently unaware of when any responses to the Interrogatories served on Vert will be produced . . . . I have sought, but do not have the authority to authorize the release of the Wolff Fording & Company documents . . . .

See Email from John Barr to Counsel dated October 30, 2014, which is attached to DeCamps Aff. as Exhibit 3. It appears clear from Mr. Barr's emails to Plaintiffs' counsel that neither Wolff-Fording nor Vert were cooperating with them to compile meaningful, complete and compliant discovery responses.

Furthermore, even though the responses to the Motion for Class Certification were due from the various defendants on or before October 22 and October 23, 2014, respectively, no defendant has responded to this motion. Mr. Barr, on Wolff-Fording's and Vert's behalf, did agree, though, to the joint filing of a Local Rule 7(E) Notice, wherein Plaintiffs' counsel and Mr. Barr

7

waived oral argument on the motion. (Doc. 54). This Notice was served on all defendants. (DeCamps Aff., ¶11).[4]

Even though Plaintiffs have been unable to obtain meaningful responses (if any) to their First Set of Discovery Requests from Wolff-Fording and Vert and the information they need to prove their case on liability and damages, Plaintiffs still continued to make efforts to take discovery on their allegations; they scheduled party and third-party depositions for mid-November. (Id. at ¶12). On November 3, 2014, however, the Court granted the Motions to Withdraw. (Doc. 57). In so doing, the Court directed Vert and Wolff-Fording "to retain replacement counsel who shall enter an appearance by December 1, 2014," and advised the entities that, if they fail to retain replacement counsel by that time, they would do so "at their peril." (Doc. 56). The Court directed Mr. Barr and/or Ms. Hurt to serve a copy of its Order on Vert and Wolff-Fording, which, upon information and belief, was done. (Doc. 56).

On November 4, 2014, a Director for the Defendants, Adam Levin, initiated contact with Plaintiff's Counsel, Lee D. Moylan, and left a voicemail message for her telling her that he knew that the Motions to Withdraw had been granted and asking her to consider rescheduling the depositions to enable the Defendants to obtain counsel. (Affidavit of Lee D. Moylan ("Moylan Aff."), ¶2, attached hereto as "Exhibit B"). In that voicemail and when Ms. Moylan returned Mr. Levin's call, Mr. Levin represented to Ms. Moylan that some or all of the Defendants were in the process of obtaining other counsel. (Id. at ¶3). Mr. Levin also wanted to discuss settlement. (Id.) To enable the Defendants to retain new counsel and to give the parties time to determine if settlement would be possible, Plaintiffs agreed to reschedule the depositions for December 2, 3, and 10, 2014. (Id. at ¶4).

---

[4] This Court has not ruled on Plaintiffs' unopposed Motion for Class Certification. If this Court determines that default should be entered against the Defendants, Plaintiffs request that this Court rule on the Motion for Class Certification before directing the Clerk to enter default because, for a default to be entered on behalf of not only the Plaintiffs but also the class they seek to represent, class certification must be granted first. See Partington v. American Int'l Specialty Lines Insur. Co., 443 F.3d 334, 340 (4th Cir. 2006). If this Court decides to deny the Motion for Class Certification, Plaintiffs request that this Court grant them leave to amend their SAC to include every individual who has retained Plaintiffs' counsel to represent him/her in this litigation. See footnote 1, supra.

Similarly, Judge Novak rescheduled the November 21, 2014, settlement conference for December 15, 2014. Plaintiffs' counsel promptly notified defendants via email of this Order.[5] (Id. at ¶5).

Not only did Vert and Wolff-Fording not cause counsel on their behalf to enter an appearance on or before December 1, 2014, as the Court "admonished" them to do, (Docs. 56, 57), but they have yet to do so by the date hereof.[6] As such, the Court cancelled the settlement conference, holding, "Due to Defendant entities' failure to comply with Judge Payne's December 1, 2014 deadline [to retain counsel], this Court cannot convene a meaningful settlement conference as scheduled on December 15, 2014." (Doc. 57). Since Mr. Levin's first contact with Ms. Moylan on November 4, 2014, Mr. Levin sporadically has discussed with Plaintiffs' counsel only the general concept of settling Plaintiffs' claims for a portion of the amount to which Plaintiffs believe the class is entitled. (Moylan Aff., at ¶6). Among other things, Mr. Levin has contended that Wolff-Fording has limited assets and Vert is judgment-proof. (Id. at ¶7). As time was passing during these discussions and deadlines were quickly approaching in this action, Plaintiffs' counsel warned Mr. Levin that Plaintiffs felt they needed to act in the near future. (Id. at ¶8). Ultimately, Ms. Moylan told Mr. Levin that Plaintiffs intended to file a Motion for Entry of Default against the Defendants if meaningful settlement discussions did not proceed. (Id.) In fact, to attempt to determine if Defendants intended to hire replacement counsel so that this matter possibly could be resolved or proceed, during their last telephone call on December 23, 2014, Ms. Moylan asked Mr. Levin directly if the Defendants had any intention to hire an attorney to enter his/her appearance on their behalf. (Id. at ¶9). Mr. Levin responded, "honestly," because Vert is defending another litigation and it does not want to spend money on an attorney that it otherwise could use to settle this action, the Defendants would not consider causing an attorney to enter an appearance unless Plaintiffs filed a

---

[5]     Ms. Moylan notified the Defendants via email by sending an email to Mr. Levin at the address Mr. Levin provided to her for all communications with the Defendants. (Moylan Cert., ¶5).
[6]     Wolff-Fording Holdings not only has not responded to the SAC in any manner whatsoever, but it also has yet to cause an attorney to enter an appearance for it.

9

motion for default. (Id.) This is so despite the fact that Mr. Levin also told Ms. Moylan that Vert was using an attorney to render limited advice concerning this litigation. (Id.) Based on these concessions, Ms. Moylan told Mr. Levin that Plaintiffs intended to prepare and file this motion by no later than early January 2015, because the Defendants have failed to retain new counsel and Wolff-Fording Holdings has not responded to the SAC. (Id. at ¶10).

Given the foregoing, the Defendants clearly have shown that they have made a conscious decision to ignore this Court's order and, in the process, to stall this litigation as long as possible. Because of this deliberate inaction and the controlling law (as explained more fully below), Plaintiffs have been unable to proceed with the depositions scheduled in early December and have been unable to appear for a meaningful settlement conference. In short, in all aspects of this case, Plaintiffs have been held captive by Defendants' conscious choice to not hire an attorney to represent them.

Given the foregoing, Plaintiffs respectfully request that this Court enter a default judgment against all Defendants.

### III. LEGAL ARGUMENT

Two different rules under the Federal Rules of Civil Procedure provide for the entry of default judgment – Rule 55(a) and Rule 16(f) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 55(a), 16(f). Under Rule 55, the clerk is required to enter default against "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise." Fed. R. Civ. P. 55(a); Home Port Rentals, Inc. v. Ruben, 957 F.2d 126, 133 (4th Cir. 1992); Technology Advancement Grp., Inc. v. IvySkin, LLC, 2014 U.S. Dist. LEXIS 96257, *8 (E.D. Va. July 14, 2014). Pursuant to Rule 16(f)(1), the court, on its own or on motion of a party, may issue any just order, including those authorized by Rule 37, when a party "fails to appear at a scheduling or other pretrial conference;" "is

10

substantially unprepared to participate – or does not participate in good faith – in the conference;" or "fails to obey a scheduling or other pretrial order." Fed. R. Civ. P. 16(f)(1). Rule 37 lists a variety of sanctions, including "striking pleadings in whole or in part," and "rendering a default judgment against the disobedient party." Fed. R. Civ. P. 37(b)(A). If this Court were to enter default, this "represents a concession and the factual allegations in the Complaint may be taken as true." Technology Advancement Grp., 2014 U.S. Dist. LEXIS 96257, *14. In the instant matter, the entry of default against all of the defendants is appropriate under both Rules 55(a) and 16(f).

      **A.**    **This Court Should Direct the Clerk to Enter Default Under Rule 55(a) Against Wolff-Fording Holdings for Failure to Respond to the SAC.**

As stated above, under Rule 55, the clerk is required to enter default against a party if that party is properly served with a complaint but fails to plead in response. See Fed. R. Civ. P. 55(a). As stated above, Wolff-Fording Holdings has failed to plead, otherwise defend, or respond in any manner whatsoever to the SAC. In addition, the SAC was timely and properly served upon Wolff-Fording Holdings on October 9, 2014. (DeCamps Aff., ¶10). Accordingly, this Court should direct the Clerk to enter a default against Wolff-Fording Holdings.

      **B.**    **Default Should Be Entered Under Rule 55(a) Against Vert and Wolff-Fording Because They Have Failed to Defend This Action and Completely Disregarded The Authority of This Court.**

Under Rule 55, the clerk is required to enter default against a party not only when the party has failed to respond to a pleading, but also has failed to "otherwise defend" the claims against it and when the party requesting the default has shown that fact to the Court "by affidavit or otherwise." Fed. R. Civ. P. 55(a); Home Port Rentals, 957 F.2d at 133; Technology Advancement Grp., 2014 U.S. Dist. LEXIS 96257, *8. When a corporate defendant has failed to obtain counsel to represent it after being given a reasonable opportunity to do so, numerous courts have held that the entry of default would be and is appropriate. See NGM Insur. Co. v. Secured Title & Abstract, Inc., 2008 U.S. Dist. LEXIS 33478 (E.D. Va. Apr. 23, 2008) (granting leave to withdraw filed by

11

corporate defendant's counsel and instructing that the corporation will be found in default if it fails to obtain substitute counsel); Home Port Rentals, 957 F.2d at 133 (affirming grant of default on the basis that defendants failed to participate in prosecution and defense of the action, including failing to appear at a show cause hearing"); Zimmerling v. Affinity Financial Corp., 478 Fed. Appx. 505, 507-09 (10th Cir. 2012) (denying motion to vacate default judgment when corporation did not obtain counsel when its former counsel withdrew); Trustees of Empire State Carpenters Annuity v. KDN Constr. Corp., 2014 U.S. Dist. LEXIS 166159, **3-4 (E.D.N.Y. Nov. 28, 2014) (finding that corporate defendant failed to "otherwise defend" itself under Rule 55 when it did not obtain substitute counsel as directed to do so by the court); Hemlock Semiconductor Corp. v. Global Sun Ltd., 2014 U.S. Dist. LEXIS 95836, **8-10 (E.D. Mich. July 15, 2014) (entering default judgment against corporation that did not hire counsel and that expressed its intention to proceed pro se); Peterson v. RVS Line, LLC, 2013 U.S. Dist. LEXIS 19128, **3-4 (D.S.D. Feb. 13, 2013) (citing list of cases granting default under Rule 55(a) when defendant corporation failed to appear by counsel); Nationwide Payment Solutions, Inc. v. Plunkett, 2011 U.S. Dist. LEXIS 9799, **13-17 (D. Me. Jan. 31, 2011) (entering default judgment when corporation disregarded court order to cause new counsel to enter an appearance on its behalf); Folts v. E. Asset Mgmt., LLC, 2010 U.S. Dist. LEXIS 29785, **2-3 (W.D.N.Y. Mar. 3, 2010) (entering default for party's failure to defend when the party disregarded a court order to retain counsel and citing several Second Circuit cases holding the same); Hingano v. Channing & Assocs, LLC, 2010 U.S. Dist. LEXIS 5558, **3-4 (E.D. Cal. Jan. 4, 2010) (entering default judgment for failure to retain counsel and to obey court order requiring it to do so); United States v. New-Form Manuf'g Co., 277 F. Supp.2d 1313, 1322 (U.S. Int'l Trade 2003) (citing long list of cases when default judgment entered under Rule 55, including those where entity defendant failed to retain counsel and those when defendant failed to comply with court order); see also Stith v. Thorne, 2007 U.S. Dist. LEXIS 45242, **7-11 (E.D. Va. June 12, 2007) (denying

motion to set aside default judgment when defendant failed to file response to properly served complaint for no reason other than defendant's "lack of funds" to retain an attorney). This is so because it has been the settled law "for the better part of two centuries" that a corporation may not appear pro se in federal court. Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council, 506 U.S. 194, 201-02 (1993); Allied Colloids, Inc. v. Jadair, Inc., 139 F.3d 887 (4th Cir. 1998); Acme Poultry Corp. v. U.S., 146 F.2d 738, 740 (4th Cir. 1945); NGM Insur. Co., 2008 U.S. Dist. LEXIS 33478; accord Trustees of Empire State Carpenters Annuity, 2014 U.S. Dist. LEXIS 166159, *3; accord Greater Se. Cmty. Hosp. Found., Inc. v. Potter, 586 F.3d 1, 4-5 (D.C. Cir. 2009); United States v. Hagerman, 545 F.3d 579, 581 (7th Cir. 2008); United States ex rel. Mergent Servs. v. Flaherty, 540 F.3d 89, 92 (2d Cir. 2008).

Here, Wolff-Fording and Vert initially were represented by counsel and took steps to defend this litigation. However, since counsel for these defendants filed the Motions to Withdraw over three months ago (of which they were undisputedly given notice), these defendants have done nothing to express their intention to protect their rights in this Court. Instead, they have failed to properly, completely, and timely respond to Plaintiffs' discovery requests, have deliberately chosen to ignore this Court's order to retain counsel, and have made themselves unavailable for depositions. These defendants did so even though they knew that, if they ignored the Court's Order, they would do so "at their own peril" and despite the fact that they were told that Plaintiffs would file a motion for the entry of default not only against them, but also against Wolff-Fording Holdings. Also, not only have all of the Defendants had sufficient time to hire new counsel (and Wolff-Fording Holdings has had more than enough time to respond to the SAC), but Mr. Levin, speaking for them, admitted to Plaintiffs' Counsel that, even though Vert has been consulting with an attorney about this litigation, Defendants have no intention of hiring counsel unless and until Plaintiffs filed this Motion. (Moylan Aff., ¶9). Thus, Mr. Levin has admitted that the Defendants could hire counsel if

motivated to do so. This behavior can be regarded only as evidence of the Defendants' calculated decision to fail to plead or to "otherwise defend" this action. Thus, this Court should direct the Clerk to enter default against Vert and Wolff-Fording (as well as Wolff-Fording Holdings) under Rule 55(a).

      C.      **Rule 16(f)(1) Also Justifies the Court Entering Default Against the Defendants.**

Pursuant to Rule 16(f)(1), the court, on its own or on motion of a party, may issue any just order, including those authorized by Rule 37(b)(2)(A), when a party "fails to appear at a scheduling or other pretrial conference;" "is substantially unprepared to participate – or does not participate in good faith – in the conference;" or "fails to obey a scheduling or other pretrial order." Fed. R. Civ. P. 16(f)(1). Among the sanctions Rule 37 lists is the entry of a default judgment against the "disobedient party." Fed. R. Civ. P. 37(b)(2)(A)(vi). Further, Rule 16(f)(2) provides that the Court may also order the disobedient party "to pay the reasonable expenses – including attorney's fees – incurred because of any noncompliance with this rule, unless the noncompliance was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 16(f)(2). To determine if a sanction is appropriate, the Fourth Circuit has instructed that the Court should consider the following four factors: "(1) whether the noncomplying party acted in bad faith; (2) the amount of prejudice his noncompliance caused his adversary . . . ; (3) the need for deterrence of the particular sort of noncompliance; and (4) the effectiveness of less drastic sanctions," (the "Wilson Factors"). <u>Young Again Prods. v. Acord</u>, 459 Fed. Appx. 294, 301 (4th Cir. 2011) (quoting <u>Mutual Fed. Sav. & Loan Ass'n v. Richards & Assocs., Inc.</u>, 872 F.2d 88, 92 (4th Cir. 1989) (citing <u>Wilson v. Volkswagon of Am., Inc.</u>, 561 F.2d 494, 503-05 (4th Cir. 1977)).

Here, regarding the first Wilson Factor, the record demonstrates a pattern of noncompliance that suggests nothing other than bad faith. The record shows that Vert and Wolff-Fording decided many months ago to stop defending this case. Indeed: (1) over six weeks ago, the Court ordered

Vert and Wolff-Fording to retain new counsel to proceed in this litigation (which order these defendants have ignored to this day); (2) over three months ago, these defendants were put on notice that their counsel was seeking to withdraw from the case (which request they never have opposed); and (3) for an additional period of time well before either of these events, these defendants failed to adequately communicate with or pay their counsel. Thus, for a long time leading up to the filing of this Motion, Defendants have been trying to stall this litigation, even in the face of a directive from the Court to do otherwise. Also, according to Mr. Levin, this decision has been a calculated one. He told Ms. Moylan that the Defendants have not hired counsel (and Wolff-Fording Holdings has not even responded to the SAC against it) because Vert is defending itself in other litigation, Vert wants to spend any available money on settling the action instead of defending it, and Vert believes it is judgment-proof. (Moylan Aff., ¶9). None of these reasons is a justification for flouting this Court's Order. Furthermore, where, as here, there has been evidence that the defendants failed to communicate with their attorney such that their attorney withdrew from representation, the Fourth Circuit has upheld the entry of a default judgment. See Home Port Rentals, Inc., 957 F.2d at 132. Thus, the Defendants' actions can be regarded only as bad faith.

Concerning the second and third Wilson Factors, there is evidence of prejudice here to the Plaintiffs and of conduct that must be deterred. Despite the fact that the discovery deadline is less than one month away and that the Plaintiffs have propounded numerous discovery requests and actively sought to take Defendants' depositions, Plaintiffs have received no information from the Defendants, except the Meeting Minutes and an excel spreadsheet, and have been unable to depose anyone because Defendants do not have legal counsel to attend those depositions. (DeCamps Aff., ¶¶4, 5, 12); (Moylan Aff., ¶4). Indeed, Defendants have ignored their obligations to respond to the requests and rendered themselves unavailable for depositions by failing to retain counsel. This has significantly prejudiced the Plaintiffs because this behavior has rendered Plaintiffs unable to obtain

15

necessary information to prove their case, including, but not limited to, information concerning the putative class's potential damages and information concerning the defenses Vert and Wolff-Fording summarily plead. Vert and Wolff-Fording also have made it impossible for the Court to control its docket by rendering the Court unable to compel the parties to attend a meaningful settlement conference. By Defendants' conscious disregard for the obligations they have in this action and any power the Court has over them, Defendants have been able to completely stall this litigation. The Fourth Circuit has held that "'stalling and ignoring the direct order of the court with impunity' is 'misconduct' that 'must obviously be deterred.'" Young Again Prods., 459 Fed. Appx. at 303 (quoting Mutual Fed., 872 F.2d at 93)). Accordingly, without an order entering default against the Defendants, Defendants will have been permitted to prejudice the Plaintiffs by leaving Plaintiffs no way to discover facts on their claims, and to dictate for the Court whether or not litigation may proceed against them. Such behavior must be deterred.

With respect to the fourth Wilson Factor, because Defendants have shown no interest in taking the necessary actions to defend this case in this Court since at least some time before Vert's and Wolff-Fording's counsel filed the Motions to Withdraw, there is no lesser sanction than the entry of default against the Defendants. The Defendants could have chosen to hire an attorney (particularly the attorney who already is representing Vert as it defends Vert in other litigation (according to Mr. Levin)), but did not hire one. This is so despite being informed by the Court that this course would be at their own peril and even though they were informed by the Plaintiffs that Plaintiffs would file this motion for default. If the threat of default has not caused the Defendants to act, it is difficult to see how any lesser sanction would do so.

For all of the foregoing reasons, this Court should instruct the Clerk of Court to enter a default against all of the Defendants.

### D. This Court Should Hold Proceedings to Determine the Amount of a Default Judgment.

When a plaintiff's claim on which default has been entered for the plaintiff is not for a sum certain, as in this case, the plaintiff must apply to the Court for default judgment, and if the party against whom the judgment is sought has appeared previously, that party must be served with written notice at least seven days prior to any hearing. Fed. R. Civ. P. 55(b)(2). Further, while, "[u]pon default, the well-pled allegations in a complaint as to liability are taken as true," "the allegations as to damages are not." S.E.C. v. Lawbaugh, 359 F. Supp. 2d 418, 422 (D. Md. 2005). Accordingly, Rule 55(b)(2) provides that:

> The court may conduct hearings or make referrals—preserving any federal statutory right to a jury trial—when, to enter or effectuate judgment, it needs to:
>
> (A) conduct an accounting;
>
> (B) determine the amount of damages;
>
> (C) establish the truth of any allegation by evidence; or
>
> (D) investigate any other matter.

Fed. R. Civ. P. 55(b)(2). Because Plaintiffs have been unable to obtain from Defendants records they need to most accurately determine the amount of 60 days of wages and other damages to which Plaintiffs would be entitled under the WARN Act, Plaintiffs respectfully request that this Court conduct proceedings to the end of providing Plaintiffs with the opportunity to calculate and prove the damages due.

**IV.    CONCLUSION**

For all of the foregoing reasons, Plaintiffs respectfully request that this Court direct the Clerk to enter default against all of the Defendants and issue any such Order as it deems just and

appropriate to enable Plaintiffs to determine and prove the amount of a default judgment.

               Respectfully submitted,

Dated: January 5, 2015

         By:  __/s/ *C. Michael DeCamps*__
             C. Michael DeCamps (VSB No. 15066)
             Faith Alejandro (VSB 80076)
             SANDS ANDERSON PC
             Bank of America Center
             1111 East Main Street, Suite 2400
             Richmond, VA 23219-3500
             Phone: (804) 783-7297
             E-Mail: mdecamps@sandsanderson.com
             E-Mail: falejandro@sandsanderson.com
             *Attorneys for Plaintiffs*

             Charles A. Ercole (PA Bar No. 69192)*
             Lee D. Moylan (PA Bar No. 80915)*
             KLEHR HARRISON HARVEY
             BRANZBURG, LLP
             1835 Market Street, 14th Floor
             Philadelphia, PA 19103
             Phone: (215) 569-2700
             E-Mail: cercole@klehr.com
             E-Mail: lmoylan@klehr.com
             *Attorneys for Plaintiffs*
             *Admitted *Pro Hac Vice*

## CERTIFICATE OF SERVICE

I, C. Michael DeCamps, hereby affirm that on January 5, 2015, I caused a true and correct copy of Plaintiffs' Memorandum of Law in Support of Motion for an Entry of an Order for Default Against All Defendants and for Proceedings to Determine the Amount of a Default Judgment, to be served on the following

**Via regular mail:**

Wolff-Fording Holdings, Inc.
c/o The Corporation Trust Company as Registered Agent
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

Wolff-Fording & Co.
c/o Mr. Richard Shuster, President and CEO
c/o Vert Capital Corp.
19051 W. Pico Blvd.
Los Angeles, CA 90064

Vert Capital Corp.
c/o Incorp Services, Inc. as Registered Agent
1201 Orange Street, Suite 600
One Commerce Center
Wilmington, DE 19899

Mr. Adam Levin, Director
Vert Capital Corp., Wolff-Fording Holdings, Inc. and Wolff-Fording & Co.
Vert Capital Corp.
19051 W. Pico Blvd.
Los Angeles, CA 90064

**By Email to cercole@klehr.com and lmoylan@klehr.com**:

Charles A. Ercole, Esquire
Lee D. Moylan, Esquire
Klehr Harrison Harvey Branzburg, LLP
1835 Market Street, Suite 1400
Philadelphia, PA 19103

    /s/ C. Michael DeCamps
C. Michael DeCamps (VSB No. 15066)
Faith Alejandro (VSB 80076)
SANDS ANDERSON PC
Bank of America Center
1111 East Main Street, Suite 2400
Richmond, VA 23219-3500
Phone: (804) 783-7297
E-Mail: mdecamps@sandsanderson.com
E-Mail: falejandro@sandsanderson.com
*Attorneys for Plaintiffs*

Charles A. Ercole (PA Bar No. 69192)*
Lee D. Moylan (PA Bar No. 80915)*
KLEHR HARRISON HARVEY
BRANZBURG, LLP
1835 Market Street, 14th Floor
Philadelphia, PA 19103
Phone: (215) 569-2700
E-Mail: cercole@klehr.com
E-Mail: lmoylan@klehr.com
*Attorneys for Plaintiffs*
*Admitted *Pro Hac Vice*