

APR - 2 2015

CLERK, U.S. DISTRICT COURT
RICHMOND, VA

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

BEN H. DROSTE AND CALVIN CASH,
Individually and as
Class Representatives,

     Plaintiff,

v.                             Civil Action No.: 3:14-cv-467

VERT CAPITAL CORP, WOLFF
FORDING HOLDINGS, LLC, AND
WOLFF FORDING & CO.,

     Defendants.

### MEMORANDUM OPINION

This matter is before the Court on PLAINTIFF'S MOTION TO CERTIFY CLASS (Docket No. 47).  For the reasons set forth below, the motion is granted.

### BACKGROUND

**A.   The Proposed Class and Class Claims**

In PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR CLASS CERTIFICATION AND RELATED RELIEF (Docket No. 48), Droste and Cash seek to certify two classes.  The first class, which Plaintiffs call the "June 10 Subclass", is defined as follows:

> For the "June 10 Subclass," the members are all those who worked at or reported to the Richmond Plant and who were terminated and/or laid off without cause on their part

> from their employment on or within thirty
> (30) days of June 10, 2014, as part of, or
> as the reasonably foreseeable consequences
> of the mass layoff/plant closing ordered by
> Defendants and that occurred on June 10,
> 2014, who do not file a timely request to
> opt out of the class."

Docket No. 48, at 4.   The second proposed class, which

Plaintiffs call the "June 23 Subclass" is defined as follows:

> For the "June 23 Subclass," the members are
> all those who worked at or reported to the
> Richmond Plant and who were terminated
> and/or laid off without cause on their part
> from their employment on or within thirty
> (30) days of June 23, 2014, or thereafter,
> as part [of], or as the reasonably
> foreseeable consequence of the mass
> layoff/plant closing ordered by Defendants
> and that occurred on June 23, 2014, who do
> not file a timely request to opt out of the
> class.

Id.

Both subclasses assert the same claims for relief in the

Second Amended Complaint ("SAC").   See Docket No. 41, 17-20.

Specifically, they both allege that:

> 93.   At all relevant times, Defendants
> employed more than 100 employees who in the
> aggregate worked at least 4,000 hours per
> week, exclusive of hours of overtime, within
> the United States.

> 94.   At all times relevant, each Defendant
> was an "employer" as that term is defined in
> 29 U.S.C. §2101(a)(1) and 20 C.F.R.
> §639.3(a).

> 95.   Specifically, the Vert Defendants, with
> Wolff-Fording, constituted a "single

2

employer" of the Plaintiffs and the WARN Sublass [sic] Members under the WARN Act...

96.    The Vert Defendants, as a single employer with Wolff-Fording, ordered and arranged for plant closings/mass layoffs, as those terms are defined by 29 U.S.C. §2101(a)(2).

97.    The plan closings/mass layoffs at the Richmond Plant each resulted in "employment losses," as that term is defined by 29 U.S.C. §2101(a)(2) for at least fifty of Defendants' employees as well as thirty-three percent (33%) of Defendants' workforce at the employment site, excluding "part-time employees," as that term is defined by 29 U.S.C. §2101(a)(8), and at least 50 employees (again excluding any part-time employees) on each occasion experienced an "employment loss" at a single site of employment.

98.    The Plaintiffs and the WARN Subclass Members were terminated by the Vert Defendants (as a single employer with Wolff-Fording) without cause on their part, as part of or as the reasonably foreseeable consequence of the mass layoffs/plant closings ordered by them.

99.    The Plaintiffs and the WARN Subclass Members are "affected employees" of Defendants as their single employer within the meaning of 29 U.S.C. §2101(a)(5).

100.    Defendants were required by the WARN Act to give the Plaintiffs and the WARN Subclass Members at least 60 days' advance written notice of their terminations.

101.    Defendants failed to give the Plaintiffs and the WARN Subclass members written notice that complied with the requirements of the WARN Act.

3

102.   The Plaintiffs, and each of the WARN subclass Members, are "aggrieved employees" of the Defendants as that term is defined in 29 U.S.C. §2104(a)(7).

103.   Defendants failed to pay the Plaintiffs and each of the WARN Subclass Members their respective wages, salary, commissions, bonuses, and benefits for 60 days following their respective terminations.

SAC, Docket No. 41 at ¶¶ 93-103.   Both classes request the "[a]ward of Damages in favor of each named Plaintiff and each Other Similarly Situated Individual, equal to 60 days' wages and benefits, pursuant to the WARN Act...All interest, including prejudgment interests, as allowed by law on the amounts owed under the preceding paragraphs...[and] reasonable attorneys' fees and costs." Id. at 19.

## B.   Defendants' Alleged WARN ACT Violations

Plaintiffs have sued under the Worker Adjustment and Retraining Notification Act ("WARN Act")[1], alleging that the Defendants violated the statutory scheme by terminating Plaintiffs without providing the notice required under the Act[2] and without adequately compensating employees[3].

---

[1] 29 U.S.C. §§2101 et seq.

[2] "(a) An employer shall not order a plant closing or mass layoff until the end of a 60-day period after the employer serve written notice of such an order: (1) to each representative of the affected employees as of the time of the notice, or, if

4

All named plaintiffs and proposed class members were employed at Wolff Fording & Co. in Richmond, Virginia where they manufactured and sold "hundreds of thousands of dance costumes a year." SAC, Docket No. 41 at ¶5. In June of 2014, Vert Capital incorporated Wolff-Fording Holdings and, according to the Second Amended Complaint, owns "100% of that entity." Id. at ¶¶ 1-2. Also in June of 2014, Vert Capital and Wolff-Fording Holdings "purchased a controlling interest" in Wolff Fording Co. Id. at ¶4.

On the afternoon of June 10, 2014, the Defendants informed 67 employees that their employment at the Wolff-Fording plant was being terminated effective immediately. Id. ¶¶ 38-40. Named plaintiff Calvin Cash was one of the employees whose

---

there is no such representative at that time, to each affected employee; and (2) to the State or entity designated by the State to carry out rapid response activities under section 2864(a)(2)(A) of this title, and the chief elected official of the unit of local government within which such closing or layoff is to occur." 29 U.S.C. §2102.

[3] "(a)(1) Any employer who orders a plant closing or mass layoff in violation of section 2102 of this title shall be liable to each aggrieved employee who suffers an employment loss as a result of such losing or layoff for: (A) back pay for each day of violation at a rate of compensation not less than the high of – (i) the average regular rate received by such employee during the last 3 years of the employee's employment; or (ii) the final regular rate received by such employee; and (B) benefits under an employee benefit plan described in section 1002(3) of this title, including the cost of medical expenses incurred during the employment loss which would have been covered under an employee benefit plan if the employment loss had not occurred." 29 U.S.C. §2104.

employment at Wolff-Fording Co. ended on June 10, 2014. Id. at
¶40. These employees were not provided with notice of their
terminations before the afternoon of June 10, 2014. Id. at ¶41.
Sometime after June 10, the terminated employees were told to
return to Wolff Fording on June 21, 2014, to receive a paycheck
for the two days the employees had worked immediately before
their discharge and for any accrued vacation they were entitled
to. Id. at ¶¶ 42, 48. "Many" of these checks bounced after
they were issued because of insufficient funds. Id. at ¶¶ 53-
54.

On June 23, 2014, "all but four" of the remaining employees
were told that they were being terminated. Id. at ¶59. This
included named plaintiff Ben Droste. Id. According to
Plaintiffs, the number of employees terminated on June 23
totaled "at least" 50 people. Id. at 61. The employees who
were terminated on June 23 did not receive checks from the
Defendants for the days that they had worked or for accrued
vacation time as the June 10 employees had. Id. at 64.[4]

---

[4] The Plaintiffs state that "as a result of pressure that the
[Virginia Department of Labor] put on the Vert Defendants, in
August 2014, the Vert Defendants caused certain employees to be
paid wages for the last days of their employment." SAC, Docket
No. 41 at ¶67. However, the Court has not been provided with
information regarding the number of employees who were paid and
whether the paid employees were members of the June 19 or June
23 subclass.

C. **Class Representatives – Ben Droste and Calvin Cash**

Ben Droste was employed at the Wolff Fording & Co. plant in Richmond, Virginia as a plant controller. He had been employed in that position since June of 2013 and remained in that position until he was terminated on June 23, 2014. Droste was one of the few former Wolff Fording & Co. employees who received a check from Wolff-Fording Holdings for wages he had earned prior to being terminated as a result of Virginia Department of Labor pressures.

Calvin Cash was employed at the Wolff Fording & Co. retail store in Richmond, Virginia since 1986. She was terminated on June 10, 2014.

## CLASS CERTIFICATION DISCUSSION

To obtain class certification, a plaintiff must satisfy the four requirements of Fed. R. Civ. P. 23(a). Additionally, the case must be consistent with at least one of the types of class actions defined in Fed. R. Civ. P. 23(b). Plaintiffs propose two different classes for certification; each class must satisfy all of the pertinent requirements. None of the three defendants have responded to the Plaintiffs' Motion for Class Certification at this time.

## A.   Rule 23(a)

Rule 23(a) has four requirements for class certification. They are that:  (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the representative's claims or defenses are typical of those of the class; and (4) the representative will fairly and adequately represent the interests of the class. See Fed. R. Civ. P. 23(a); Broussard v. Meineke Disc. Muffler Shops, Inc., 155 F.3d 331, 337 (4th Cir. 1998). The plaintiff bears the burden of proving all requirements of Rule 23. Lienhart v. Dryvit Systs., Inc., 255 F.3d 138, 146 (4th Cir. 2001).

As the Fourth Circuit explained in Gariety v. Grant Thornton, LLP, 368 F.3d 356, 365 (4th Cir. 2004), district courts are not required "to accept plaintiffs' pleadings when assessing whether a class should be certified."  Rather, "the district court must take a 'close look' at the facts relevant to the certification question and, if necessary, make specific findings on the propriety of certification."  Thorn v. Jefferson-Pilot Life Ins. Co., 445 F.3d 311, 319 (4th Cir. 2006) (quoting Gariety, 368 F.3d at 365).  "Such findings can be necessary even if the issues tend to overlap into the merits of the underlying case," but "[t]he likelihood of the plaintiffs'

success on the merits . . . is not relevant to the issue of whether certification is proper." Id. (internal citations omitted).

## 1.   Ascertainability of the Proposed Class

Rule 23 states that "[a]n order that certifies a class action must define the class and the class claims, issues, or defenses." Fed. R. Civ. P. 23(c)(1)(B). This is in addition to the certification requirements listed in Rule 23(a). "The definition of the class is an essential prerequisite to maintaining a class action." Roman v. ESB, Inc., 550 F.2d 1343, 1348 (4th Cir. 1976); see also Kirkman v. N.C. R. Co., 220 F.R.D. 49, 53 (M. D.N.C. 2004). "The court should not certify a class unless the class description is 'sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member.'" Solo v. Bausch & Lomb Inc., 2009 WL 4287706, at *4 (D.S.C. Sept. 25, 2009) (quoting 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1760 (3d ed. 2005)).

In a recent decision, the Fourth Circuit held that "[a] class cannot be certified unless a court can readily identify the class members in reference to objective criteria." EQT Production Co v. Adair, 2014 WL 4070457, at *7 (4th Cir. 2014); see also Wm. Moore et al., 5 Moore's Federal Practice § 23.21[1]

(3d ed.) ("A class action is possible only when the class definition provides a court with tangible and practicable standards for determining who is and who is not a member of the class."). "The plaintiffs need not be able to identify every class member at the time of certification. But if class members are impossible to identify without extensive individualized fact-finding or 'mini-trials', then a class action is inappropriate." EQT, 2014 WL 4070457, at *7. Rather, "[f]or a class to be sufficiently defined, the court must be able to resolve the question of whether class members are included or excluded from the class by reference to objective criteria." Moore, supra, § 23.21[3][a].

The two classes would consist of individuals who were formerly employed at the Wolff Fording & Co. plant and store in Richmond, Virginia before they were terminated on either June 10, 2014 or June 23, 2014. Assuming that business records exist which contain the names of former employees, the members of the subclass are certainly ascertainable. Thus, the ascertainability requirement is satisfied.

## 2.   Rule 23(a)(1) Numerosity

Rule 23(a)(1) provides that the second of the requirements for a class action is that the class be "so numerous that

joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "No specified number is needed to maintain a class action under Fed. R. Civ. P. 23; [rather], application of the rule is to be considered in light of the particular circumstances of the case . . . ." Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n, 375 F.2d 648, 653 (4th Cir. 1967) (finding that a class of 18 was sufficient to fulfill the numerosity requirement). "Courts consider a number of factors in considering whether joinder is practicable including the size of the class, ease of identifying its numbers and determining their addresses, facility of making service on them if joined and their geographic dispersion." Adams v. Henderson, 197 F.R.D. 162, 170 (D. Md. 2000) (internal quotation omitted). Typically, a "class of 41 or more is usually sufficiently numerous." 5 Moore's Federal Practice §23.22 (Matthew Bender 3d Ed.). See Cypress v. Newport News Gen's Nonsectarian Hosp. Ass'n, 375 F.2d 648, 653 (4th Cir. 1967) (finding that a class of 18 was sufficiently numerous); Newberg on Class Actions §3:11 (6th Ed. 2014) ("[J]oinder is generally deemed practicable in classes with fewer than 20 members and impracticable in classes with more than 40 members."); Ganesh, LLC v. Computer Learning Ctrs., Inc., 183 F.R.D. 487, 489 (E.D. Va. 1998) ("As few as forty [class members] can suffice in an appropriate case.")

11

### a.   The June 10, 2014 Class

Plaintiffs assert that the "June 10 WARN Subclass consists of approximately 67 individuals." Docket No. 48 at 9. This number indicates that the class is sufficiently numerous to satisfy the Rule 23(a)(1) requirement.

### b.   The June 23, 2014 Class

Plaintiffs assert that the "proposed June 23 WARN Subclass consists of approximately 51 employees." Docket No. 48 at 9. While this subclass is smaller than the June 10, 2014 proposed subclass, it too is sufficiently numerous to satisfy the Rule 23(a)(1) numerosity requirement.

### 3.   Rule 23(a)(2) Commonality

Rule 23(a)(2) requires that there be questions of law or fact common to the class. Fed. R. Civ. P. 23(a)(2); Lienhart v. Dryvit Sys., Inc., 255 F.3d 138, 146 (4th Cir. 2001). The commonality requirement focuses on the claims of the class as a whole, and it "turn[s] on questions of law [or fact] applicable in the same manner to each member of the class." Califano v. Yamasaki, 442 U.S. 682, 701 (1979). To satisfy this requirement, there need be only a single issue common to the class. See Cent. Wesleyan Coll. v. W.R. Grace & Co., 143 F.R.D. 628, 636 (D.S.C. 1992), aff'd 6 F.3d 177 (4th Cir. 1993). In

<u>Wal-Mart v. Dukes</u>, the Supreme Court focused on the commonality requirement, stating that:

> Commonality requires the plaintiff to demonstrate that the class members "have suffered the same injury." This does not mean merely that they have all suffered a violation of the same provision of law.
> ***
> [The proposed class members'] claims must depend upon a common contention – for example, the assertion of discriminatory bias on the part of the same supervisor. That common contention, moreover, must be of such a nature that it is capable of class-wide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.

131 S. Ct. 2541, 2551 (2011).

### a.    The June 10, 2014 Class

There are several "factual and legal allegations" that form a "common set of facts concerning Defendants' actions and a common core of legal issues with respect to each putative Subclass Members' rights." Docket No. 48 at 12. For example, in order to prevail under the WARN Act, each putative class member would have to establish that Defendants were subject to the WARN Act[5], that the class member was employed by Defendants,

---

[5] Under the WARN Act, an "employer" is "any business enterprise that employs 100 or more employees, excluding part time employees; or 100 or more employees who in the aggregate work at least 4,000 hours per week (exclusive of hours of overtime)." 28 U.S.C. 2101 (a)(1).

that Defendants terminated the class member on or about June 10, 2014 without proper notice, and that Defendants failed to pay the class members the required 60 days of wages and benefits. Id. These common legal issues are such that "determination of [their] truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Dukes, 131 S. Ct. at 2551. Thus, commonality is satisfied.

### b.   The June 23, 2014

Just as the cases of all June 10 subclass members revolve around common issues of fact and law, so too do the cases of all June 24 subclass members. Each subclass member's case requires resolution of several common issues (i.e. failure to notify, Defendant's qualification as an "employer" under the WARN Act) that are central to each claim and that can be resolved generally. Thus, commonality is again satisfied.

### 4.   Rule 23(a)(3) Typicality

The Fourth Circuit has described the typicality requirement as follows:

> The typicality requirement goes to the heart of a representative [party's] ability to represent a class, particularly as it tends to merge with the commonality and adequacy-of-representation requirements. The representative party's interest in prosecuting his own case must simultaneously tend to advance the interests of the absent class members. For that essential reason, plaintiff's claim cannot be so different

14

> from the claims of absent class members that
> their claims will not be advanced by
> plaintiff's proof of his own individual
> claim. That is not to say that typicality
> requires that the plaintiff's claim and the
> claims of class members be perfectly
> identical or perfectly aligned. But when
> the variation in claims strikes at the heart
> of the respective causes of actions, we have
> readily denied class certification. In the
> language of the Rule, therefore, the
> representative party may proceed to
> represent the class only if the plaintiff
> establishes that his <u>claims or defenses</u> are
> typical of the <u>claims or defenses</u> of the
> class.

<u>Deiter v. Microsoft Corp.</u>, 436 F.3d 461, 466-67 (4th Cir. 2006)
(emphasis in original) (internal citations and quotation marks
omitted). Thus, the appropriate analysis of typicality
"involves[s] a comparison of the plaintiffs' claims or defenses
with those of the absent class members." <u>Id.</u> at 467. "To
conduct that analysis, [the district court] begin[s] with a
review of the elements of [the plaintiff's] <u>prima facie</u> case and
the facts on which the plaintiff would necessarily rely to prove
it." <u>Id.</u> Then, the district court must determine "the extent
to which those facts would also prove the claims of the absent
class members." <u>Id.</u>

    **a.   The June 10, 2014 Class**

All members of the proposed June 10, 2013 subclass make essentially identical claims under the WARN Act[6]. Specifically, Cash has "alleged that [he] suffered the same type of injury as the other Class Members...and that Defendants' failure to comply with the WARN Act represents the single course of conduct that resulted in the injury to [him] and the Class Members." He has alleged that, on or around June 10, 2014, he was terminated from his employment at Wolff Fording & Co. in Richmond, Virginia with proper notice and without being compensated as the WARN Act requires. He shares an alleged employer, alleged termination date, and an alleged lack of notice with all putative class members. Thus, there can be no argument that Cash's claims are anything but typical of putative class members' WARN Act claims against Defendants. For the foregoing reasons, typicality is satisfied.

### b. The June 23, 2014 Class

Again, all members of the proposed June 23, 2014 subclass make identical claims under the WARN Act. This includes Droste, who is the named plaintiff representing the June 23, 2014 class. Thus, Droste's claim is typical of the claims raised by putative class members.

---

[6] As discussed _infra_, the putative class members will receive different damages computed with reference to their previous wage levels.

16

### 5.   Rule 23(a)(4) Adequacy of Representation

The requirement for adequacy of representation necessitates that the Court be satisfied that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).   This standard is met if "the named plaintiff has interests common with, and not antagonistic to, the [c]lass' interests; and . . . the plaintiff's attorney is qualified, experienced and generally able to conduct the litigation."   In re Se. Hotel Props. Ltd. P'ship Investor Litig., 151 F.R.D. 597, 606-07 (W.D.N.C. 1993).

Both Droste and Cash are adequate class representatives. Neither have interests antagonistic to those of the classes they seek to represent because "there is complete overlap of the relief sought" by the named plaintiffs and the putative class members.   Docket No. 48 at 13.   Additionally, both Droste and Cash have participated with their counsel, and have been cooperative with court deadlines and proceedings to this date. Thus, adequacy is satisfied by both class representatives.

Class counsel is also adequate in this case.   The law firm of Klehr Harrison Harvey Branzburg, LLP has "represented thousands of employees and served as lead or co-lead counsel in numerous employment class action lawsuits, primarily WARN Act cases."   Ercole Declaration, Docket No. 48-4.   The attorneys

17

have been retained not only by Droste and Cash, but also by 54 other class members. Docket No. 48 at 13. Additionally, the attorneys have diligently prosecuted this case, even when faced with uncooperative, non-responsive defendants. Thus, their representation of class members is adequate.

## B. Rule 23(b)(3)

In order to be certified as a class action, the class must satisfy at least one of the class categories defined in Rule 23(b). Plaintiffs here move for certification under Rule 23(b)(3). Certification under Rule 23(b)(3) is appropriate where the Court finds that questions of law or fact common to the members of the class <u>predominate</u> over any questions affecting only individual members, and that a class action is <u>superior</u> to other available methods for the fair and efficient adjudication of the controversy.

### 1. Predominance

"Rule 23(b)(3)'s predominance requirement is 'far more demanding' than Rule 23(a)'s commonality requirement . . . ." <u>Gariety v. Grant Thornton, LLP</u>, 368 F.3d 356, 362 (4th Cir. 2004) (quoting <u>Amchen</u> 521 U.S. 591, 623-24 (1997)). "Whereas commonality requires little more than the presence of common questions of law and fact, Rule 23(b)(3) requires that 'questions of law or fact common to the members of the class

18

predominate over any questions affecting only individual members.'" Thorn v. Jefferson-Pilot Life Ins. Co., 445 F.3d 311, 319 (4th Cir. 2006) (internal citation omitted) (quoting Fed. R. Civ. P. 23(b)(3)). The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Gariety, 368 F.3d at 362 (internal citation and quotation marks omitted).

As discussed in the analysis of Rule 23(a)'s commonality requirement, there are several questions of law and fact which are common to all members of the classes. These include whether Defendants were employers subject to the WARN Act, whether proper notice was given to employees before they were terminated, and whether Defendants paid the damages required in the event that proper notice is not given to employees under the WARN Act.

Despite these similarities, some individualized inquiry would be necessary to determine the proper amount of damages if Defendants are found to have violated the WARN Act. §2104(a)(1) sets forth the formula through which a Court is to determine the amount of damages that an employee is entitled to in the event that his or her employer "orders a plant closing or mass layoff in violation of" the WARN Act. This formula states that the employee is entitled to "back pay for each day of violation" at

a rate of the greater of "the average regular rate received by such employee during the last 3 years of the employee's employment" or "the final regular rate received by such employee." Id. This inquiry will obviously entail an individualized analysis of each employee's salary level immediately before termination and the average of the three years preceding.

Predominance is satisfied despite the individualized damages inquiry. In the Fourth Circuit, "differences in damages among the potential class members do not generally defeat predominance if liability is common to the class." In re Mills Corp. Securities Litigation, 257 F.R.D. 101, 109 (E.D. Va. 2009) (quoting Morris v. Wachovia Sec., Inc., 223 F.R.D. 284, 299 (E.D. Va. 2004)). While it is clear that this case involves individualized differences in damages, it is also clear that Defendants' liability to class members is a common issue that can be resolved by an overarching inquiry into Defendants' behaviors with respect to the two classes. Thus, because there are several issues that are capable of common, class-wide resolution and because these issues predominate over the individualized damages inquiry, the proposed classes satisfy Rule 23(b)'s predominance requirement.

## 2.   Superiority

Superiority requires that use of a class action be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Superiority "'depends greatly on the circumstances surrounding each case,'" and "'[t]he rule requires the court to find that the objectives of the class-action procedure really will be achieved.'" Stillmock, 385 F. App'x at 274 (quoting 7A Wright, Miller & Kane, supra, § 1779). When making a "determination of whether the class action device is superior to other methods available to the court for a fair and efficient adjudication of the controversy...[the court should] not contemplate the possibility that no action at all might be superior to a class action." Brown v. Cameron-Brown Co., 92 F.R.D. 32, 49 (E.D. Va. 1981). Factors that the court should consider include, but are not limited to, "the class members' interest in individually controlling the prosecution or defense of separate actions; the extent and nature of any litigation concerning the controversy already begun by or against class members; the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and the likely difficulties in managing the class action." Fed. R. Civ. P. 23(b)(3)(A)-(D).

21

When evaluating superiority, "the...determination involves...a comparison of the class action...as a procedural mechanism to available alternatives." Newberg on Class Actions § 4:64 (6th ed. 2014). According to the Supreme Court, "the policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." Amchen, 521 U.S. at 617 (quoting Mace v. Van Ru Credit Corp., 109 F.3d 338, 344 (7th Cir. 1997)). Thus, if the choice presented to the court is between "no action" and class action, rather than an "individual action" and class action, a class action will be superior.

The potential class members' claims are small when considered in comparison to the effort it would take to pursue them in court. As noted above, the WARN Act allows for recovery of up to 60 days of back pay plus 60 days of benefits. In comparison, initiating a WARN Act action in federal court not only requires the plaintiff's time and effort (i.e. attending court dates, assisting in filings, etc.), but also necessitates finding an attorney willing to take on such a low-paying case and requires a plaintiff to accept the possibility that they will be responsible for their legal bills.

In addition to ensuring a full and fair adjudication of all members' cases, the class action is a superior method in this instance for several practical reasons. First, it preserves judicial economy. There are over 100 potential class members in this case. To force each potential class member to bring and prove his or her case instead of consolidating these legal and factual questions in one case would be a waste of judicial resources and the individuals' time and money.

Second, the factors listed in Rule 23 weigh in favor of a class action's superiority. To begin, there seems to be little incentive to control individual cases, as each individual class members' cases turn on issues of fact that are common to the entire group. Of course, class members would be given the opportunity to opt out of the class if they believed that individual litigation was more beneficial for them. There is no other related litigation pending that bears on this analysis. Similarly, the last factor is satisfied because the similarity of factual and legal issues indicates that a class action would be manageable from the parties' and court's perspective.

## CONCLUSION

For the reasons set forth above, the PLAINTIFF'S MOTION TO CERTIFY CLASS (Docket No. 47) is granted. The June 10, 2014 and

23

June 23, 2014 classes are certified pursuant to the class definition contained herein.

It is so ORDERED.

_____ /s/  REP_____

Robert E. Payne
Senior United States District Judge


Richmond, Virginia
Date: April _____2___, 2015

24